UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ESAU DOZIER,

Petitioner,

v.

DWIGHT NEVEN, et al.,

Respondents.

Case No. 2:08-cv-00489-KJD-GWF

ORDER

Esau Dozier's 28 U.S.C. § 2254 petition for writ of habeas corpus is before the court for final disposition on the merits (ECF No. 6).

## I.  Background & Procedural History

In December 2004, a jury convicted Dozier of two counts of robbery with a deadly weapon (counts 1 and 2) and burglary (count 3). Exh. 31.[1] The state district court sentenced him as follows: 72 to 180 months each on counts 1 and 2, with a like and consecutive term for the deadly weapon enhancement on each count; 72 to 180 months on count 3, counts 1 and 2 to run consecutively, and count 3 to run concurrently. Exh. 36, p. 24.  Judgment was entered in February 2005. Exh. 37.

The Nevada Supreme Court affirmed Dozier's convictions and subsequently affirmed the denial of his state postconviction petition.  Exhs. 56, 85.

This court originally granted respondents' motion to dismiss this federal petition as time-barred, and judgment was entered (ECF No. 25, 26). Dozier ultimately filed a

---

[1] Exhibits referenced in this order are exhibits to petitioner's motion for relief from judgment, ECF No.36, and are found at ECF Nos. 37-40.

1

motion for relief from judgment, which demonstrated that respondents had failed to provide this court with the complete state-court record and that the complete state-court record demonstrated that Dozier's federal petition was in fact timely (ECF No. 36). This court vacated the judgment and directed respondents to answer grounds 1 and 3 (ECF No. 48). Respondents have answered, and petitioner filed a reply (ECF No. 53, 54).

## II. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating

state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

3

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

**III.     Instant Petition**

**Ground 1**

Dozier contends that his convictions were not supported by sufficient evidence in violation of his Fourteenth Amendment due process rights (ECF No. 6, p. 3). He argues that the robbery victims were unable to identify him and that the State did not establish use of a deadly weapon beyond a reasonable doubt.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id.* at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Demissie Kelemework testified at trial that she had been visiting Reno with several friends on the night in question. Exh. 29, pp. 113-129. She and Mulunesh Gutema had stepped inside their motel room when a man pushed into the room before she locked

4

the door. Kelemework said that the man had a black gun that was probably 12 inches long. She described the man as black, about 150 to 160 pounds, neat, clean-shaven and nicely dressed. He took her fanny pack and other items and stuffed them in a red bag that was in the room. He took a gift bag that belonged to a black woman from Pleasanton, California who was not in the room at the time. Kelemework identified Dozier and one other man from a police photo lineup as the possible robber. In court, while she identified Dozier, she acknowledged that she was not 100% certain he was the robber.

Ms. Gutema also testified. *Id.* at 129-143. She stated that she and Kelemework had gone back to their motel room to get their jackets. She had about $600-700 in a fanny pack that she was wearing. The man that forced his way into their room was black with a shaved or bald head and had a black gun about 12 inches long. He put all the items he took in a red bag with a black strap that belonged to Gutema. She testified that she was not certain Dozier was the robber.

Reno Police Officer Thomas Mueller testified that he met with the victims the night of the robbery. *Id.* at 143-150. They described the robber as a black male, approximately 30 to 40 years of age with a shaved head, clean-shaven, 160 to 180 pounds, wearing black and holding a black pistol. Reno Police Officer Eric Stroshine testified that a couple of months after the robbery he was contacted by Katherine Stewart, who wanted to file a report of an embezzled vehicle. *Id.* at 150-152. Stewart also told him she had information about the armed robbery. Months before trial, the state district court issued a material witness order requiring Stewart to post bail as a material witness in order to secure her presence at Dozier's trial. Exh. 9.

Katherine Stewart subsequently testified at trial that Dozier had been her boyfriend for about a year and one-half. Exh. 29, pp. 156-177. Dozier had a black revolver about 12 inches long. On the night in question, Stewart and Dozier did not have a place to stay, so she parked in downtown Reno and was going to sleep in her car. Dozier's gun

5

was in a suitcase in the trunk of her car.  He told her he was going to "go do some hustling," he went to the trunk of the car, but Stewart did not see what he took from the trunk.  Dozier was dressed in a black leather jacket, black t-shirt, dark Levi's, and black boots. Stewart locked the car and went to sleep.  Dozier returned, Stewart unlocked the car, Dozier threw a red bag with a black strap in the car, got in the driver's seat, started the car and drove away.  She described him as "excited, wanting to get out of there; he was sweating." *Id.* at 165. He drove them to Sparks and got a room at a Motel 6.  In the hotel room he dumped out the bag, and Stewart saw two purses or fanny packs and a gift bag.  In the purse was a California driver's license with a photo of a black woman and a Pleasanton address.

The Nevada Supreme Court rejected Dozier's challenge to the sufficiency of the evidence on appeal:

> First, Dozier contends that insufficient evidence was adduced at trial to support his convictions for robbery and burglary.  The standard of review for a challenge to the sufficiency of the evidence to support a criminal conviction is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McNair v. State*, 825 P.2d 571, 573 (Nev. 1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).
>
> Here, victims Demissie Kelemework and Mulunesh Gutema both testified that at about 10:15 pm on May 25, 2002, a man with a gun entered their El Ray Motel room and ordered them to be quiet and to give him whatever they had. They were scared and gave the man their leather fanny packs, each of which contained several hundred dollars. The man also took a small gift bag that belonged to a black female friend of theirs from Pleasanton, California. The man packed the things he was taking into a red traveling bag with a black strap. Kelemework described the man as a 30 to 40-year-old black male, well-shaven, and dressed in nice clothes. Gutema described the man as a black male with a clean-shaven head. Neither woman was 100 percent sure that Dozier was the robber.
>
> Reno Police Officer Thomas Mueller testified that, at about 10:50 pm on May 25, 2002, he was called to the area of The Sands Casino regarding a robbery that occurred at the El Ray Motel. He stated that the victims described the robber as a clean-shaven black male, 30 to 40 years

6

of age, who had a shaven head, was dressed in a black top and black pants, and was armed with a black pistol.

Katherine Stewart, Dozier's former girlfriend, testified that on May 25, 2002, she drove from Concord, California to Reno to visit Dozier. She was tired and they did not have money for a hotel room, so they parked by The Sands and Sundowner sometime after nightfall and Stewart slept in the car. Dozier, however, wanted to go to the casinos and do some hustling. He got out of the car, opened and closed the trunk, and left. Stewart knew that Dozier's handgun was in the trunk. When Dozier returned, he had a red canvas bag with a black strap, which Stewart described as "like a gym bag." Dozier was excited, sweating, and wanted to leave. They drove from Reno to Sparks where they got a hotel room. Dozier dumped the contents of the red bag onto the bed. They included a small gift bag, a leather fanny pack, a purse, and $200.00. Stewart also saw a California driver's license; it had a picture of black woman and listed a Pleasanton address. Stewart stated that Dozier was dressed in a black leather jacket, black T-shirt, dark Levi's, and black boots.

We conclude that the jury could reasonably infer from the circumstantial evidence presented at trial that Dozier committed the crimes of robbery and burglary. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, sufficient evidence supports the verdict.

Second, Dozier claims that insufficient evidence was adduced at trial to show he used a deadly weapon or handgun. However, both Kelemework and Gutema testified that the robber had a big black gun, which they indicated was about a foot long. And Stewart testified that she had actually handled Dozier's handgun, it was a black revolver about a foot long, and it was in Dozier's suitcase in the trunk of her car on the night of the robbery. We conclude that a jury could reasonably infer from this testimony that Dozier used a handgun to commit robbery, and that there is sufficient evidence to support the jury's verdict.

Exh. 56, pp. 1-4. Dozier argues that the Nevada Supreme Court ignored Stewart's motivation to lie because she was angry with him over taking her car (ECF No. 54, pp. 4-7). But it is up to the jury to weigh credibility, and the credibility of witnesses is generally beyond the scope of a review of the sufficiency of the evidence. *Schlup*, 513 U.S. at 330. Dozier has not shown that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. He has failed to demonstrate that the Nevada Supreme Court decision on federal ground 1 was contrary

7

to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, Dozier is not entitled to relief on ground 1.

**Ground 3**

Dozier contends that his sentence for the deadly weapon enhancement exceeded the statutory limitation and violated his Eighth Amendment right to be free from cruel and unusual punishment (ECF No. 6, p. 7). While not entirely clear, Dozier appears to also assert that his trial counsel was ineffective for failing to object to the sentence imposed at the sentencing hearing. *Id.*

Respondents argue that neither claim was properly exhausted as a federal constitutional claim in state court (ECF No. 53, pp. 11-13). As these claims fail on the merits even under *de novo* review, the court need not address the exhaustion issue. *See Jones v. Ryan*, 691 F.3d 1093, 1101 n.2 (9th Cir. 2012).

"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); *see, e.g., Solem v. Helm*, 463 U.S. 277, 303 (1983) (holding that a sentence of life imprisonment without the possibility of parole for seventh nonviolent felony violates Eighth Amendment). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289- 90. For purposes of federal habeas review, under 28 U.S.C. § 2254(d)(1), "[a] gross proportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). Thus, the federal proportionality analysis comes into play "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005.

The state district court sentenced Dozier to 72 to 180 months on each of the two robbery with a deadly weapon counts, with an equal and consecutive term for the deadly weapon enhancement on each of the two counts, count 1 and 2 to run consecutively. Exh. 36, pp. 24. The court sentenced him to 72 to 180 months on the burglary count, to run concurrently. *Id.*

The Nevada Supreme Court rejected this claim:

> Third, Dozier contends that the district court improperly applied the deadly weapon enhancement to his robbery sentences. He argues that because the deadly weapon enhancement must be "equal to and in addition to the term of imprisonment prescribed by statute for the crime" (NRS 193.165(1)) and that the term of imprisonment prescribed by statute for the crime of robbery is 2 to 15 years, the district court erred when it sentenced him to an equal and additional term of 6 to 15 years. However, our review of the record reveals that the district court properly sentenced Dozier for his robbery convictions and correctly enhanced the sentences with equal and consecutive terms of imprisonment for the use of a deadly weapon. The district court imposed enhancements that fell within the sentencing limits prescribed by NRS 200.380(2) as required by NRS 193.165(1). Accordingly, we conclude that the district court did not err.

Exh. 56, p. 4. Respondents point out that Dozier did not invoke the Eighth Amendment in his direct appeal (ECF No. 53, pp. 11), though he did argue that his sentence constituted cruel and unusual punishment. In any event, the Nevada statute proscribes that robbery is punishable by a minimum term of 2 years and a maximum term of 15 years. NRS 200.380(2). The state district court sentenced him on robbery with a deadly weapon and burglary counts to terms well within the statutory parameters. A comparison of the crimes committed and the sentences imposed certainly does not give rise to an inference of gross disproportionality here. *Harmelin*, 501 U.S. at 1005.

As to whether Dozier's counsel was ineffective for failing to object to the sentence at the sentencing hearing, ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious

9

that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

When pronouncing the sentences, the court explained that it followed the recommendation of the Division of Parole and Probation, that it considered Dozier's criminal history, that armed robbery is an extraordinarily dangerous and violent offense and that the victims will never be free from the trauma that was inflicted. Exh. 36, pp. 26-27. Dozier has not shown that there was a reasonable probability of a different

10

outcome if counsel had objected to the sentence imposed at the time of the sentencing hearing. Both claims in ground 3 are, therefore, denied.

Thus, the petition is denied in its entirety.

### IV.     Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Dozier's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Dozier's claims.

### V. Conclusion

**IT IS THEREFORE ORDERED** that the petition (ECF No. 6) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: 11 December 2019.

KENT J. DAWSON
UNITED STATES DISTRICT JUDGE